IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

MEADOW CREEK CONDOMINIUM
OWNERS ASSOCIATION,

     Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

     Defendant.

_____

## COMPLAINT AND JURY DEMAND
_____

**COMES NOW** Plaintiff, MEADOW CREEK CONDOMINIUM OWNERS ASSOCIATION, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and in support of its Complaint, allege and aver as follows:

### PARTIES

1.     Plaintiff, Meadow Creek Condominium Owners Association ("Plaintiff" or "Meadow Creek") is a non-profit Colorado corporation whose principle street address is 1224 Wadsworth Blvd., Lakewood, Colorado 80214.

2.     Plaintiff is the duly organized homeowners' association for the development known as Meadow Creek located at 701 Harlan Street, Lakewood, Colorado 80214 (the "Property").

3.     Upon information and belief, Defendant, Certain Underwriters at Lloyd's, London, ("Lloyd's"), is a foreign insurance company incorporated and domiciled in the state of New York and maintains its principal place of business in a state other than Colorado.

### JURISDICTION AND VENUE

4.     This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

### FACTS COMMON TO ALL COUNTS

5.     The Meadow Creek Property consists of nine buildings.

6.      The roofing systems covering the Property were installed in May 2008. See attached Certificate of Completion attached hereto as **Exhibit "A."**

7.      Meadow Creek purchased a Commercial Property Coverage Policy of insurance from Lloyd's under Policy Number GEP1039017 (the "Policy"). A true and accurate copy of the Policy is attached hereto as **Exhibit "B."**

8.      The Policy is an all risk policy of insurance.

9.      The Policy is a replacement cost value policy and covers loss to the Property.

10.     The Policy provides coverage for direct physical loss to covered property at covered locations caused by a covered peril.

11.     The Policy includes Ordinance or Law coverage for Meadow Creek's Property.

12.     The Policy provides for the rebuild, repair, or replacement of damaged materials with other materials of like kind and quality.

13.     The Policy includes an actual cash value limitation on roofing coverings older than fifteen years at the time of loss or damage.

14.     Under the Policy, Lloyd's is obligated to pay for direct physical loss and damage to the insured Property resulting from hail and wind.

15.     Under the Policy, Lloyd's agreed to adjust all losses fairly and timely.

16.     Meadow Creek paid the premiums due under the Policy in a timely manner.

17.     Meadow Creek performed all duties and responsibilities required of it under the Policy.

18.     On or about May 8, 2017, during the Policy period, the Property suffered direct physical loss and/or damage resulting from hail and/or wind.

19.     The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

20.     The direct physical loss and/or damage resulting from the hail and/or wind resulted in functional damage to the Property.

21.     The direct physical loss and/or damage resulting from the hail and/or wind prevented the roofing systems covering the Property from continuing to function as a barrier to entrance of the elements to the same extent as they did before the hail damage occurred.

22.     The direct physical loss and/or damage resulting from the hail and/or wind has diminished the service life of the roofing systems covering the Property.

23.     The direct physical loss and/or damage resulting from the hail and/or wind was timely reported to Lloyd's.

24.     Lloyd's assigned Claim Number 4138935 to the Property loss.

25.     Meadow Creek hired a general contractor, Dynamic Roofing and Construction ("Dynamic"), to assist with the repair of the loss and damage to its Property resulting from the hail and/or wind storm occurring on or about May 8, 2017.

26.     Lloyd's retained an Illinois based independent claims management company, VeriClaim, Inc., to assist with the investigation and adjustment of Meadow Creek's claim.

27.     Lloyd's retained an independent estimating company, Young & Associates, Inc., to assist with the estimating of Meadow Creek's claim.

28.     Young & Associates services clients to aid them in controlling costs associated with building damages.

29.     On or about June 3, 2017, Dynamic provided Lloyd's representative, VeriClaim, a draft repair estimate for one of the nine building's which outlined replacement cost value damages in the amount of $133,475.48. A copy of Dynamic's Draft Estimate is attached hereto as **Exhibit "C."**

30.     On or about June 8, 2017, Dynamic on behalf of Meadow Creek, advised Lloyd's representative, VeriClaim, of the continued leaking at the Property resulting from the hail and/or wind storm that occurred on or about May 8, 2017.

31.     On or about June 8, 2017, Dynamic on behalf of Meadow Creek, requested Lloyd's provide authorization for emergency mitigation of the roofing systems covering the Property.

32.     On or about June 12, 2017, Young & Associates performed a site inspection of the Property.

33.     On or about June 23, 2017, Young & Associates provided a copy of its damage estimate to Plaintiff's contractor, Dynamic, which outlined $1,026,048.51 in replacement cost value covered damages. A copy of Young & Associates Damage Estimate is attached hereto as **Exhibit "D."**

34.     On or about July 5, 2017, Lloyd's representative, VeriClaim, advised Dynamic that it was sending the Young & Associates estimate to Lloyd's with payment recommendation.

35.     On or about July 8, 2017, Dynamic began repairs to the Property, including full replacement of the roofing systems covering the Property.

36.     On or about July 17, 2017, Dynamic on behalf of Meadow Creek, provided Lloyd's with a copy of permits pulled for the replacement of the roofing systems covering the Property in 2008.

37.     On or about July 21, 2017, Meadow Creek's general contractor, Dynamic, completed the replacement of each of the nine roofing systems covering the Property.

38.     On or about August 1, 2017, Lloyd's retained a Florida based independent adjusting and claims management company, Cramer, Johnson, Wiggins & Associates, Inc. ("CJW"), to assist with administration of benefits related to Meadow Creek's claim for direct physical loss to its Property resulting from the hail and/or wind storm occurring on or about May 8, 2017.

39.     On or about August 7, 2017, CJW provided Meadow Creek with a copy of Young & Associates revised estimate which identified $1,015,087.58 in replacement cost value covered damages. A copy of Young & Associates Revised Estimate is attached hereto as **Exhibit "E."**

40.     On or about August 8, 2017, Meadow Creek provided CJW with an executed Sworn Statement in Proof of Loss in the amount of $1,015,087.58. See Sworn Statement in Proof of Loss attached hereto as **Exhibit "F."**

41.     On or about August 8, 2017, Meadow Creek provided CJW with a copy of the certificate of completion relating to the prior replacement of the roofing systems covering the Property in 2008. See Certificate of Completion attached hereto as **Exhibit "A."**

42.     On or about August 8, 2017, Meadow Creek provided CJW with a copy of permits pulled for the replacement of the roofing systems covering the Property in 2008.

43.     On or about August 8, 2017, Lloyd's had notice that the roofing systems covering the Property were replaced in 2008.

44.     On or about August 8, 2017, Lloyd's had notice that Meadow Creek had completed the repairs of damages to the roofing systems covering the Property resulting from a hail or wind storm that occurred on or about May 8, 2017.

45.     On or about August 16, 2017, Lloyd's issued payment to Meadow Creek in the amount of $684,319.89.

46.     Despite the completion of the replacement of the roofing systems covering the Property, Lloyd's failed to issue payment for depreciation related to the roofing systems covering the Property in the amount of $125,353.30.

47.     On or about September 6, 2017, Meadow Creek's general contractor, Dynamic, provided Lloyd's with an updated estimate which outlined replacement cost value covered damages in the amount of $1,168,933.58.

48.     On or about September 6, 2017, Meadow Creek's general contractor, Dynamic, requested that Lloyd's release the undisputed recoverable depreciation and depreciation to the roofing systems.

49.     On or about October 21, 2017, Dynamic completed repairs to the Property, including full replacement of the roofing systems covering the Property.

50.     On or about November 28, 2017, Lloyd's representative, Young & Associates, provided Meadow Creek with a revised estimate which outlined $1,105,530.96 in replacement cost value covered damages and $932,241.88 in actual cash value covered damages. See Young & Associates Revised Estimate attached hereto as **Exhibit "G."**

51.     On or about November 28, 2017, Lloyd's had notice that Meadow Creek had completed the repairs of damages to the Property resulting from a hail or wind storm that occurred on or about May 8, 2017.

52.     On or about December 12, 2017, Meadow Creek's general contractor, Dynamic, requested Lloyd's provide an update as to the release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

53.     On or about January 9, 2018, Lloyd's representative, VeriClaim, requested that Meadow Creek provide documentation of payment issued to Dynamic by Meadow Creek in order to release the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

54.     On or about January 9, 2018, Meadow Creek's general contractor, Dynamic, provided documentation outlining three payments received from Meadow Creek in the amount of $767,403.39. See E-Mail & Payment Documentation attached hereto as **Exhibit "H."**

55.     On or about February 16, 2018, Meadow Creek requested an update from CJW regarding the release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

56.     On or about February 21, 2018, Meadow Creek requested an update from CJW regarding the release the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

57.     On or about February 22, 2018, Meadow Creek requested an update from CJW regarding the release the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

58.     Despite having been previously been provided documentation demonstrating the age of the roofing system five months earlier, on or about February 26, 2018, CJW requested documentation demonstrating the age of the roofing systems prior to the May 8, 2017, hailstorm, as well as copies of the paid invoices relating to the repairs made to the Property for damages resulting from the hail and wind storm occurring on or about May 8, 2017.

59.     On or about February 26, 2018, Meadow Creek's general contractor, Dynamic, for a second time, provided documentation demonstrating that the roofing systems covering the Property had been replaced in 2008.

60.     On or about February 26, 2018, Meadow Creek's general contractor, Dynamic, for a second time, provided final invoices relating to the repairs made to the Property for damages resulting from the hail and wind storm occurring on or about May 8, 2017.

61.     On or about March 7, 2018, Meadow Creek requested an update from CJW regarding the release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

62.     On or about March 9, 2018, a telephone conference was scheduled for March 14, 2018, to discuss the additional documentation required for release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

63.     On or about March 14, 2018, a telephone conference occurred between Meadow Creek, Dynamic, and VeriClaim, to discuss the additional documentation required for release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37. However, Lloyd's representative, CJW, failed to attend the telephone conference.

64.     On or about March 14, 2018, Meadow Creek requested an update from Lloyd's representative, CJW, regarding the release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

65.      On or about April 15, 2018, the undersigned requested release of the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

66.     On or about April 15, 2018, Lloyd's representative, CJW, issued payment for the outstanding undisputed recoverable depreciation insurance benefits in the amount of $309,716.37.

67.     Lloyd's minimum standards of claims management require that managing agents ensure that claims are adjusted and processed in an accurate and professional manner.

68.     Lloyd's minimum standards of claims management require that managing agents properly manage claims to conclusion.

69.     Lloyd's minimum standards of claims management require that managing agents ensure reserving is undertaken with the goal of a consistent, timely and accurate result taking into account both possible costs and indemnity potential.

70.     Lloyd's minimum standards of claims management require that managing agents ensure claims managed by any third party are handled in accordance with Lloyd's Claims Management Principles and Minimum Standards, as appropriate.

71.     Lloyd's minimum standards of claims management require that managing agents regularly monitor the service provided by the third party and, if required standards are not met, restrict or terminate the delegation.

72.     Lloyd's failure to timely release $309,716.37 in recoverable depreciation has resulted in a delay of payment of covered benefits without a reasonable basis.

73.     It is apparent from Lloyd's conduct, that Lloyd's has adopted a plan or approach to delay, as much as possible, its handling and payment of the claim.

74.     Plaintiff has fulfilled all duties required of it under the Policy after discovery of the loss.

75.     Plaintiff has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Lloyd's.

## FIRST CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

76.     Plaintiff realleges and reaffirms Paragraphs 1-75 as if fully set forth herein.

77.     Under the Policy and Colorado law, Lloyd's had a duty to act reasonably and in good faith in the handling of Meadow Creek's claim.

78.     Under the Policy and Colorado law, Lloyd's had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Meadow Creek and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

79.     Under the Policy and Colorado law, Lloyd's owes Meadow Creek the duty of good faith and fair dealing.

80.     At all times material hereto, Lloyd's had the non-delegable duty to investigate the claim objectively and to not look for ways to deny benefits or attempt to not pay the full amount owed.

81.     At all times materials hereto, Lloyd's owed Meadow Creek the duty to give equal consideration to the financial interests of its insured and not to give greater consideration to its own financial interests while investigating and adjusting its insured's claims.

82.     At all times material hereto, Lloyd's had an obligation to conduct a thorough, fair, unbiased, and timely investigation of the claim presented to it, and then properly evaluate and timely pay those claims.

83.     Lloyd's sold Meadow Creek the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

84.     Lloyd's knew that the Policy was purchased to protect the Property in the event of a loss.

85.     Meadow Creek has cooperated with Lloyd's in the processing of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

86.     Meadow Creek has cooperated with Lloyd's in the investigation of the claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

87.     Meadow Creek has not erected any obstacles to Lloyd's ability to investigate Meadow Creek s claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

88.     Meadow Creek has not erected any obstacles to Lloyd's ability to evaluate Meadow Creek's claim for covered benefits resulting from a hail and/or wind storm occurring on or about May 8, 2017.

89.     Lloyd's failed to treat Meadow Creek's interests with equal regard to its own.

90.     Despite knowledge of completion of repairs to the roofing systems covering the Property, Lloyd's failed to timely release outstanding undisputed recoverable depreciation insurance benefits related to the replacement of the roofing systems covering the Property.

91.     Despite knowledge of completion of repairs to the Property, Lloyd's failed to timely release outstanding undisputed recoverable depreciation insurance benefits related to repairs done at the Property.

92.     Lloyd's decision to delay the benefits owed to Meadow Creek was intentional and not accidental.

93.     Lloyd's knew that its delay in the payment of covered benefits owed under the Policy would cause Meadow Creek financial hardship.

94.     Lloyd's failed to assist Meadow Creek with the presentation of its claim.

95.     Lloyd's breached its duty of good faith and fair dealing by failing to acknowledge and act reasonably promptly upon communication with respect to Meadow Creek's claim for damages resulting from a hail and wind storm that occurred on or about May 8, 2017.

96.     Among other circumstances, Lloyd's has committed unfair settlement practices including, without limitation:

(a)     Lloyd's has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

(b)     Lloyd's has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c)     Lloyd's has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; and

(d)     Lloyd's encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

97.     Lloyd's improperly delayed Meadow Creek's claim to increase profits.

98.     Lloyd's improperly delayed Meadow Creek's claim to maintain its loss ratio.

99.     Lloyd's improperly delayed Meadow Creek's claim to meet department goals.

100.    Lloyd's conduct demonstrates that it was repeatedly aimed at benefiting itself to the detriment of Meadow Creek.

101.    Lloyd's has committed unfair claim settlement practices as alleged in the preceding paragraphs of Meadow Creek's Complaint.

102.    Lloyd's conduct constitutes a bad faith breach of the insurance contract.

103.    Lloyd's has committed such actions with such frequency as to indicate a general business practice.

104.    As a direct and proximate result of Lloyd's actions, Meadow Creek has:

(a)     suffered damages as a proximate result of the misconduct alleged; and

(b)     suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Meadow Creek Condominium Owners Association, respectfully requests this Court enter judgment against Defendant, Certain Underwriters at Lloyd's, London, for damages resulting from bad faith breach of insurance contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### SECOND CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits
Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

105.     Meadow Creek re-alleges and reaffirms Paragraphs 1-104 as though fully set forth herein.

106.     Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

107.     Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

108.     Meadow Creek is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

109.     Meadow Creek suffered a loss covered by the Policy and submitted a claim for that loss to Lloyd's.

110.     The claimed loss and damage submitted under claim number 4138935 was covered by the Policy and Meadow Creek was owed covered benefits under the Policy.

111.     Lloyd's delayed payment of covered benefits without a reasonable basis for its actions.

112.     Among other circumstances, Lloyd's has unreasonably delayed payment of covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Meadow Creek's Complaint.

113.     Lloyd's delayed payment of covered benefits without a reasonable basis for its action by failing to tender payment of recoverable depreciation.

114.     Despite being provided all necessary documentation demonstrating the age of the roofing systems covering the Property, Lloyd's continued to delay indemnification of its own insured for nearly five months without a reasonable basis for doing so.

115.     Lloyd's actions in the adjustment of Meadow Creek's claim demonstrate an unmistakable complete delay of its Insured's benefits without a reasonable basis for its actions.

116.     Lloyd's unreasonably delayed payment of covered benefits without a reasonable basis for its action by forcing Meadow Creek to retain its own professionals to assist in recovering recoverable depreciation being improperly withheld by Lloyd's.

117.     Lloyd's unreasonably delayed payment of covered benefits without a reasonable basis for its action by failing to release outstanding undisputed recoverable depreciation insurance benefits related to the replacement of the roofing systems covering the Property.

118.    Lloyd's unreasonably delayed payment of covered benefits without a reasonable basis for its action by failing to release outstanding undisputed recoverable depreciation insurance benefits related to repairs done at the Property.

119.    Lloyd's unreasonably delayed payment of covered benefits without a reasonable basis for its action by ignoring documentation demonstrating that the roofing systems covering the Property had been replaced in 2008.

120.    Lloyd's unreasonably delayed payment of Meadow Creek's recoverable depreciation to increase profits.   Lloyd's actions were intended to dissuade Meadow Creek in pursuing benefits due and owing under the terms of the policy in bad faith.

121.    Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Meadow Creek Condominium Owners Association, respectfully requests this Court enter judgment against Defendant, Certain Underwriters at Lloyd's, London, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## REQUEST FOR JURY TRIAL

122.    Meadow Creek requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 12th day of July, 2018

/s/ *Jonathan E. Bukowski*
Larry E. Bache, Jr., Esq.
Colorado Bar No.: 51958
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Timothy G. Burchard, II
Colorado Bar No.: 48635
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:     720-665-9680
Facsimile:      720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com